UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

v.                                                                    7:05-CR-0385
                                                                      (GHL)
JENNIFER A. HUMPHREY,

                       Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

HON. GLENN T. SUDDABY                                 JOHN L. CALCAGNI, III, ESQ.
United States Attorney                                Special Assistant U.S. Attorney
*Counsel for the Government*
141 Lewis Avenue
Fort Drum, New York 13602

OFFICE OF SETH BUCHMAN                                SETH BUCHMAN, ESQ.
*Counsel for Defendant*
20298 South Shore Road
Three Mile Bay, New York 13693

GEORGE H. LOWE, United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER**

      Defendant Jennifer A. Humphrey ("Defendant") has been charged by Information with knowingly or intentionally possessing marijuana. Dkt. No. 1. She has moved for suppression of the marijuana, claiming a Fourth Amendment violation of her rights. Dkt. No. 4. For the reasons discussed below, the motion is denied.

    A.    **THE FACTS**

      The following constitute my findings of fact, based upon Defendant's moving affidavit (Dtk. No. 6) and witness testimony and exhibits presented at an evidentiary hearing.

      Defendant's husband was in the Army, and he was assigned for duty at Fort Drum. On

June 19, 2005, Defendant, her husband, and their children checked into Room H144 at the Fort Drum Inn ("the Inn"), to await the availability of more permanent housing. According to Defendant's moving affidavit, they "left the room at The Inn at 11:00 A.M. on July 6, 2005, with all our bags and our three children" and they "left the keys in the room." Dkt. No. 6 ¶¶ 4, 6. Defendant's husband paid the lodging bill.

Sometime after 11:00 a.m. on July 6, 2005, the Inn's front desk notified the housekeeping staff that Room H144 had been vacated. A staff member entered Room H144 and performed housekeeping services. Upon completion of those services Deborah Bogenschutz, a housekeeping supervisor, inspected the room to ensure that it was clean and up to standards for the Inn's next guest. Among other things, she opened closets and drawers, to see if they were clean and if belongings had been left behind by a guest. These inspection activities are part of the Inn's standard procedures. Ms. Bogenschutz's duties have nothing to do with law enforcement.

While inspecting the room Ms. Bogenschutz observed a small purse in the bottom drawer of a dresser. The purse was not fully closed, and Ms. Bogenschutz saw a package of rolling papers that apparently had slid out of the purse. She also saw an identification card in the purse's first compartment. She picked up the purse and observed a clear baggie sticking out of the unzipped top. She opened the bag fully and saw that the baggie contained what she assumed to be marijuana. There were other items in the purse as well.

Ms. Bogenschutz promptly left the room, with the intention of taking the purse and its contents to the front desk, when she immediately came into contact with another of the Inn's supervisors, Randy Gillette. Because Mr. Gillette was more senior in tenure at the Inn, Ms.

Bogenschutz told him what was in the purse and gave it to him, on the assumption that he would know better than she what to do with it.

Mr. Gillette decided to take the purse to Janet Hunter, the Inn's lodging manager, whose office was about a mile away. He drove there, reported to Ms. Hunter what had occurred, and she instructed him to call the MPs. He did so, advising them that a purse containing illegal paraphernalia had been found at the Inn. Neither Mr. Gillette nor Ms. Hunter opened the purse, and none of the contents of the purse were visible to them. The duties of Mr. Gillette and Ms. Hunter have nothing to do with law enforcement.

Police Officer Matthew Noyes and another law enforcement person arrived at Ms. Hunter's office shortly thereafter. Mr. Gillette took the purse from Ms. Hunter's office to his office, immediately adjacent to Hunter's. Mr. Gillette observed Officer Noyes open the purse, flip it over, and empty the contents onto a desk.

Officer Noyes testified that when he was given the purse by Mr. Gillette it was open and he saw a clear plastic baggie sticking out of the top of the purse. He stated he spread the baggie open, concluded that it contained marijuana, and called his supervisor to request that a "drug team" be made available. He testified that he then emptied the contents of the purse onto the desk. Officer Noyes stated that if the purse had been closed, and the baggie had not been in plain view, he would have been required to obtain a warrant to open the purse.

In response to Officer Noyes' request, Investigator Sean Keyes of the Criminal Investigation Division reported to Mr. Gillette's office. He conducted a field test on very minute amounts of the substances that were present in two baggies. The tests were positive, indicating that the substances were marijuana.

Finally, I find that the Inn's Standard Operating Procedure ("SOP") for "lost and found" items (Government's Ex.1) was not followed with respect to the purse and certain of the Humphreys' toiletries. However, it is not clear that this SOP would be applicable to contraband. In addition, based upon the evidence presented at the hearing, I find that the Inn's employees, *i.e.*, Ms. Bogenschutz, Mr. Gillette, and Ms. Hunter, were government employees.[1]

### 1. The Fourth Amendment is Not Applicable to Ms. Bogenschutz's Conduct

The Defendant argues that the Inn is a "government actor." Dkt. No. 13 at 1. She also presumably argues that Ms. Bogenschutz, as an employee of the Inn, was a "government actor" when she observed and took possession of Defendant's purse and its contents, in Room H144 on July 6, 2005. Given that Ms. Bogenschutz was a "government employee", I will assume *arguendo* that she was a "government actor."

The issue, however, is whether the strictures of the Fourth Amendment were applicable to Ms. Bogenschutz's conduct on that occasion, even as a "government actor." Put another way, the issue is whether Ms. Bogenschutz's conduct "occurred either during an investigation conducted by the government as an employer or during a law enforcement official's performance of a traditional government function." *Poe v. Leonard*, 282 F.3d 123, 137 (2d Cir. 2002). In *Poe*, the Second Circuit cited with approval the Ninth Circuit's decision in *United States v. Attson*. "The types of non-law enforcement conduct to which the [Supreme] Court has extended the scope of the [Fourth] [A]mendment are thus typically motivated by some sort of investigatory or

---

[1] I am not at all sure that in fact and in law these individuals are government employees. However, the limited evidence presented at the hearing on this issue indicates that they are.

administrative purpose designed to elicit a benefit for the government." *United States v. Attson*, 900 F.2d 1427, 1430 (9th Cir. 1990).

Here it cannot be claimed that Ms. Bogenschutz was a "law enforcement official [performing] a traditional government function," and I so found above. *Poe*, 282 F.3d at 137. Therefore, because her conduct was of a non-law enforcement nature, the analysis must focus on what motivated Ms. Bogenschutz's conduct. As the *Poe* Court stated in quoting from *Attson*, was Ms. Bogenschutz's conduct "motivated by some sort of investigatory or administrative purpose designed to elicit a benefit for the government." *Poe*, 282 F.3d at 137. Or as the *Attson* Court stated: "[w]hat motivated Dr. Patel to draw and analyze Attson's blood?" *Attson*, 900 F.2d at 1431.

The answer here again is obvious. I find that Ms. Bogenschutz was motivated only by her responsibility to assure that Room H144 was clean and in order for occupancy by the Inn's next guest and by her responsibility to see that lost property was handled properly. There simply are no facts whatsoever that provide even a **hint** that she was "motivated by some sort of investigatory or administrative purpose designed to elicit a benefit for the government" (*Attson*, 900 F.2d at 1430), or that she was functioning within "an investigation conducted by the government as an employer" *Poe*, 282 F.3d at 137.[2] As a result, Ms. Bogenschutz did not conduct a "search" or "seizure" protected by the Fourth Amendment.[3]

---

[2] In *Attson* there at least was **some** evidence that the police had requested that a blood sample be taken and analyzed. *Attson*, 900 F.2d at 1433. The District Court there was not persuaded that this was what motivated Dr. Patel.

[3] Therefore, it is irrelevant as to whether the purse was closed when Ms. Bogenschutz first saw it or was open, with the baggie and rolling papers in plain view.

## 2. Neither Officer Noyes nor Investigator Keyes Engaged in Conduct in Violation of the Fourth Amendment

Officer Noyes obtained possession of the purse from Mr. Gillette. Both Mr. Gillette and Ms. Hunter testified that at that point in time the purse was closed, with none of its contents visible. Officer Noyes, on the other hand, testified that the purse was open and one of the baggies was in plain view. Interestingly, Officer Noyes testified that if the purse had been closed he would have been required to obtain a warrant.

On this issue I find the testimony of Mr. Gillette and Ms. Hunter to be credible, and therefore I find that the purse was closed when Officer Noyes took possession of it. However, I conclude that under the circumstances, and in light of the Supreme Court's decision in *United States v. Jacobson*, 466 U.S. 109 (1984), Officer Noyes was not required to obtain a warrant.

In *Jacobson* employees of Federal Express, a private freight carrier, opened a package that had been damaged and torn by a forklift. Inside the package five or six pieces of crumbled newspapers covered a tube about ten inches long. The employees cut open the tube and found four plastic bags, at least one of which, they observed, contained a white powder. They then notified the Drug Enforcement Administration ("DEA"). However, before a DEA agent arrived the employees replaced the plastic bags in the tube and put the tube and the newspapers back into the package.

When the DEA agent arrived he removed the four plastic bags from the tube and saw the white powder. He opened each of the bags and removed a trace of the white powder with a knife blade. A field test identified the substance as cocaine. Subsequently other agents arrived and conducted a second field test. All of this was accomplished without a warrant.

The persons to whom the package was addressed eventually were prosecuted, and they moved to suppress. The District Court denied the motion and the defendants were convicted. On appeal the Eighth Circuit Court of Appeals reversed, holding that the field testing constituted a significant expansion of the earlier private search, and therefore a warrant was required.

The Supreme Court in turn reversed. Initially the Court determined that the conduct of the Federal Express employees did not constitute a violation of the Fourth Amendment because it was private action. With respect to the DEA agents' conduct, the Court held that "[t]he Agent's viewing of what a private party had made available for his inspection did not violate the Fourth Amendment." *Jacobson*, 466 U.S. at 119.

In the instant case, when Officer Noyes opened the purse, emptied the contents on the desk, and observed baggies, a white powder, and rolling papers, he learned nothing beyond what Ms. Bogenschutz had learned. Therefore, based upon *Jacobson*, his conduct was not violative of the Fourth Amendment.[4]

Defendant argues that "[by] exceeding the scope of the private actor's invasion of privacy, the Officer nullified any *Jacobson* plain view interpretation." Dkt. No.10 at unnumbered 4. First, as is discussed below in point "3", Defendant did not have a reasonable expectation of privacy in the purse after she vacated Room H144, and therefore there was no violation of her privacy. Second, *Jacobson* is not a "plain view" case; rather, the issue there, as Defendant apparently recognizes given the sentence quoted above, was whether the conduct of the DEA agents

---

[4] Law enforcement agents would be well advised, in situations similar to those in *Jacobson* and the instant case, to obtain a warrant. If Officer Noyes had discovered incriminating evidence in the purse other than the marijuana, which had not been observed by Ms. Bogenschutz, it probably would be suppressed.

exceeded the scope of the private search. In this regard, Defendant points to no conduct by Officer Noyes or Investigator Keyes that exceeded the conduct of Ms. Bogenschutz.

Instead, Defendant cites to *State v. von Bulow*, 475 A.2d 995 (R.I. 1984). In *von Bulow*, decided approximately two months after the *Jacobson* decision was issued, the Rhode Island Supreme Court concluded upon the facts before it that the law enforcement conduct in that case was an expansion of the private actor's conduct. *von Bulow*, 475 A.2d at 1015-19. That analysis appears to be correct. But those are not the facts here, as I have found above, where Officer Noyes' actions provided him with no information beyond what Ms. Bogenschutz had learned. Defendant has cited to no facts that are inconsistent with this finding.

Defendant states that "after a private opening of the package, if a warrant can be acquired and the package left intact, then it should be done"(Dkt. No.10 at unnumbered 3), and cites to the decision in *United States v. Durken*, 335 F.Supp.922 (S.D.N.Y. 1971). First, this District Court decision predates the Supreme Court's decision in *Jacobson*. More importantly, the *Durken* court found that the police conduct exceeded the private actor conduct which, again, did not occur in this case.

*Jacobson* also provides the answer with respect to Investigator Keyes' field testing of a minute amount of the powder. "A field test that merely discloses whether or not a particular substance is cocaine does not compromise any legitimate interest in privacy." *Jacobson*, 466 U.S. at 123. Furthermore, "the destruction of the powder during the course of the field test was reasonable." *Id.* at 125. Defendant cites to the New York County Supreme Court case of *People v. Pettinato*, 484 N.Y.S.2d 428 (Sup.Ct.N.Y.Cty.1984), and to a California appellate case, *People v. Leichty*, 205 Cal.App.3d 914 (4th Dist.1984). The holdings in these cases, based upon

*Jacobson*, were that field tests by law enforcement officials were not violative of the Fourth Amendment. Both courts went on to discuss the propriety of subsequent laboratory testing. Because the case here involves only a field test conducted by law enforcement, I do not understand how these cases support Defendant's position.

### 3. Defendant Did Not Have a Reasonable Expectation of Privacy in the Purse

Because I have found that the conduct of Ms. Bogenschutz, Officer Noyes and Investigator Keyes was not regulated by the Fourth Amendment, I need not resolve whether at the time of their conduct Defendant had a reasonable expectation of privacy in the purse. *Attson*, 900 F.2d at 1431. I nevertheless will address the issue briefly, and I conclude that she did not.

I have found, and indeed it probably is beyond dispute, that Defendant had checked out of Room H144 prior to the time that Ms. Bogenschutz discovered the purse. At that point Defendant retained a **property** interest in the purse[5] but she did not have a legitimate expectation of privacy in it.

> Applying these principles, we have held that when a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room or in any articles therein of which the hotel lawfully takes possession . . . . *Cf. Abel v. United States*, 362 U.S. 217, 241 (1960) (when defendant vacated room and hotel took exclusive possession, government agent's search of items left behind, with the consent of the hotel, was not wrongful). This rule applies even when the accused retains significant property interests in the seized item or place. For example, we have held that once the guest's access to the room is no longer his "exclusive right," he has no

---

[5] The Inn recognized such a property interest, since its written policy for "lost and found" items directed employees to "[a]ttempt to contact the guest if possible." Govt. Ex. 1 ¶ 4.f.

9

>legitimate expectation of privacy in the room even though he himself still has access.

*United States v. Rahme*, 813 F.2d 31, 34 (2d Cir. 1987) (other citations omitted).

**ACCORDINGLY**, it is hereby

**ORDERED**, that Defendant's motion to suppress (Dkt. No. 4) is **DENIED**.

Dated: May 23, 2006
     Syracuse, New York

*/s/ George H. Lowe*
George H. Lowe
United States Magistrate Judge